## TYSEN and others *vs.* MOORE and others.

In an action against common carriers by sea, to recover the value of a cask of wine brandy, the contents of which are lost on the voyage, by leakage, it is erroneous to charge the jury that the only question is whether the cask was properly made, and sufficient, so that with ordinary care, or proper care, the cask would have reached its destination in safety; because that withdraws from the jury the question whether the cask was properly *stowed,* an element in the cause to the benefit of which the defendant is entitled.

THIS action was brought against the defendants to re-cover $900, the alleged value of a cask of wine brandy shipped at San Francisco, by the firm of Hoadly & Co., on the ship *Grace Darling*, and consigned to the plaintiffs in New York, the contents of which were lost by leakage on the voyage. The defendants were shipping merchants, at San Francisco, and had chartered the *Grace Darling* for the voyage.

The complaint charges the defendants as common car-riers, and alleges that the brandy was lost through the de-fendants' negligence, and not by the perils of the sea.

The answer denies the allegations of the complaint gen-erally, and alleges as special matter of defense, that the brandy was shipped under a bill of lading, dated the 21st day of November, 1864, signed by L. J. Hotchkiss, the master of the ship *Grace Darling*, as the agent of the owners, and not of the defendants. That the defendants

were neither actually nor constructively the owners of the ship, and never had possession, management or control of her, but were merely the affreighters, under a charter party of affreightment, dated the 8th day of November, 1864, made by said Hotchkiss as the agent of the owners.

On the arrival of the ship at New York, it was found that a hole had been made in the cask, out of which the wine brandy had leaked. The hole was made by a chock, which had worked down from an upper tier.

The action was tried before a jury. When the plaintiffs rested, the defendants' counsel moved for a dismissal of the complaint on the following grounds:

*First.* That the defendants were not common carriers, or the carriers of the goods in question, and not liable in any view of the case.

*Second.* That there was no evidence that the loss had occurred from bad stowage, but on the contrary, it was proved that it had been well stowed and protected.

The court denied the motion, and the defendants' counsel excepted.

Again, at the close of the testimony, the defendants' counsel asked the court to direct a verdict for the defendants, or to dismiss the complaint, on the grounds that the defendants were not the common carriers of the cask in question, not being the owners of the ship, and sustaining only the relation of affreighters under the terms of the charter party; and that the liability, if any existed, was on the general owners of the ship.

The court refused so to charge, or to dismiss the complaint on the grounds stated, but ruled, on the contrary, that the action was properly brought against the defendants, and that, as a matter of law, the defendants were common carriers of the goods in question; to which refusal and ruling the defendants' counsel excepted.

The judge charged the jury, among other things, that the only question for their consideration was, whether or

not the cask in which the liquor was contained was sufficient for the purposes of such voyage, and if they were satisfied that it was, they should find for the plaintiffs.    To this the defendants excepted.

The jury found a verdict for the plaintiffs, with $1018 damages.

The court thereupon ordered that the exceptions be heard, in the first instance, at the general term, and that the judgment in the meantime be suspended.

*J. T. Williams*, for the appellants.

I. The wine brandy in question was not lost through negligence or bad stowage.  1. The cargo was stowed in the usual and customary manner.   The vessel will not be held liable for damages resulting from the usual mode of stowage.   The absence of any special agreement as to the mode of stowage, tacitly refers to the established usage of the trade in that respect.   (2 *Pars. on Cont.* 537, 5th ed., and cases cited.   *Lamb* v. *Parkman*, 1 *Sprague's Decis.* 343. *Baxter* v. *Leland*, 1 *Blatch.* 526.   *Rich* v. *Ship Martha*, 12 *How.* 347.   *Clark* v. *Barnwell, Id.* 272.)   "If goods are stowed according to the usage,   *   *   *   damages cannot be recovered for any injury occasioned by bad stowage." (*Flanders on Shipping*, 216.   *Major* v. *White*, 7 *Carr. & P.* 41.   3 *Conn. R.* 9.   1 *Blatch.* 526.)   The only evidence adduced on the trial, as to the cause of the leakage, went to show that it was caused by the working of the cargo, which is a peril of the sea.   2. Under the bill of lading, the carrier was not to be liable for loss or injury arising from the perils of the sea or navigation, unless guilty of negligence; and the burden of proving negligence rested upon the shipper.   (*Clerk* v. *Barnwell*, 12 *How. U. S. Rep.* 272.)   The testimony showing that the cargo was well stowed and packed according to established custom, the ground for charging the carrier for damages to the goods entirely fails.   (*Rich* v. *Lambert*, 12 *How. U. S. Rep.* 357.)

Tysen *v.* Moore.

II. Even if negligence or bad stowage be shown, the appellants are not liable. Under any circumstances, the appellants cannot be made responsible for any damage to the cargo, no matter how great the degree of negligence which the respondents may succeed in establishing against the ship. The appellants were merely affreighters under the charter party, and never had possession, management or control, actual or constructive, of the vessel. The goods were shipped under the bill of lading, signed by Captain Hotchkiss, who was agent of the owners and. not of the appellants ; and there was no contract whatever with the appellants in relation to the transportation of the cargo. The bill of lading was the only contract appertaining thereto. "The bill of lading is the written evidence of the contract for the carriage and delivery of goods sent by water for certain freight." (1 *H. Black.* 359.) In *Mactaggert* v. *Henry*, (3 *E. D. Smith*, 397,) the court, INGRAHAM, J., says : "The contract [is] contained in the bill of lading." "It is the written evidence of a contract for the carriage of goods sent by water, for a certain freight." (1 *Bouv. Inst.* 353.) The bill of lading " is *not* simply a receipt for goods of which the delivery might be proved independently of the receipt itself, but it is a contract to carry and deliver." (*Woods* v. *Perry*, 1 *Wright*, 240. *See* 3 *Kent's Com.* 280, 11*th ed., and authorities there cited; Schr. May Queen*, 1 *Olc. Adm.* 498.) The bill of lading will not bind the appellants, unless they were the owners, either actually or for the voyage. When the general owner retains the possession, command and navigation of the ship, the charter party is considered a mere affreightment sounding in covenant, and the charterer is not clothed with the character or responsibility of ownership. (1 *Cranch*, 214. *Abb. on Ship. marg. p.* 46. *McCardin*, v. *Chesapeake Ins. Co.*, 8 *Cranch*, 39. *The Aberfoyle*, 1 *Abb. Adm.* 242. *McIntyre* v. *Bowne*, 1 *John.* 228. *Clarkson* v. *Edes*, 4 *Cowen*, 470. 11 *Barb.* 501. 30 *id.* 481.) If the general owner retains the pos-

session, command and navigation of the ship, the charter party is a mere affreightment sounding in covenant, and the freighter is not clothed with the character or legal responsibilities of ownership. (3 *Kent's Com. marg. p.* 138. *Christie* v. *Lewis,* 2 *Brod. & Bing. Eng. C. P.* 410.) A charter party that does not give the charterer *entire control of the vessel,* does not divest the general owner of his lien for freight, nor of his right to collect the same. (*Mactaggert* v. *Henry,* 3 *E. D. Smith,* 390. *Holmes* v. *Pavenstedt,* 5 *Sandf.* 97. *Clarkson* v. *Edes,* 4 *Cowen,* 470.) Suppose the captain and crew had negligently stowed the article in question, or had, through any negligence, caused the injury complained of; under the principle *respondeat superior,* who would have been liable? In other words, whose servants were the master and crew? Who employed them? Who put the ship into their hands? Who was bound to pay them for their services? Who had the right to direct their actions, and who could discharge them at pleasure? Certainly not the charterers, but the owners of the ship only. The charter party was made by the captain under his general authority as captain. He had no power, as between himself and his owners, to employ another captain, or to permit another captain to take charge of the vessel, or in any way to change his relation to the owners who had so put him in possession at Boston. In *McIntyre* v. *Bowne,* (1 *John.* 229,) the court, Thompson, J., says, " The owner of the vessel, and not the charterer, is responsible for the conduct of the master and crew, and if there be a failure to deliver, by reason of their negligence, he is accountable.

III. The court erred in refusing to dismiss the complaint, for the absence of any proof that the cargo was badly stowed. There is not a shadow of evidence that the casks in question were badly stowed. If no negligence or misfeasance were proved, the loss in question was a peril of the sea.

IV. The court erred in charging the jury that the de-

fendants were common carriers. The owners of the ship, not the defendants, were the carriers.

V. The court erred in submitting the question to the jury as to the sufficiency of the casks. There was no evidence bearing on such a question. The exception upon that point was well taken.

*John L. Lindsay*, for the respondents.

I. It is immaterial whether the defendants owned the vessel in which the goods were transported, or not. (*Russell* v. *Livingston*, 19 *Barb*. 346. *Moore* v. *Evans*, 14 *id*. 524. *Teall* v. *Sears*, 9 *id*. 317. 3 *Sandf*. 613. *Sherman* v. *Wells*, 28 *Barb*. 403. *Fairchild* v. *Slocum*, 19 *Wend*. 332.)

II. In the case of *Roberts* v. *Turner* (12 *John*. 232) the defendant was a mere warehouse keeper and forwarder of goods. (*See criticisms on this case*, 19 *Wend*. 332. 9 *Barb*. 323.) The following circumstances show conclusively that the defendants acted and contracted as, and were in fact, common carriers. The contract for shipment was made with the defendants. The defendants were entitled to the freight upon the goods which they put upon the vessel, over and above the specified sum of $12,500, which they agreed the owner should receive for the use of the vessel, and the plaintiffs were to pay freight to the defendants. The defendants were shipping merchants. The carrying capacity of the vessel was at the sole use and disposal of the defendants. The owners of the vessel could not contract to carry goods, or receive goods, on board. The defendants were allowed a certain number of days, and they were to pay $100 per day for each day the vessel was detained beyond the period limited by the charter party. All primage was to belong to the defendants. The cargo was consigned to the defendants' agents at New York. The owners were not entitled to any part of the freight; they were merely to deduct the charter money from the freight collected by them, and pay the balance over to the

defendants, free of commissions for collecting. The defendants agreed that the freight would cover the amount of the charter party, and they were to secure the payment of the charter money to the satisfaction of the captain. The owners of the vessel were not interested in the enterprise. The defendants would have been entitled to a lien on the cargo for their freight. They had the benefit of the enterprise, and should not be allowed to shift the responsibility.

III. The court properly refused to charge the jury as requested by the counsel for the defendants. It is well settled that in the absence of any special agreement the carrier is an insurer as against all, except the acts of God and the public enemy. (11 *John.* 1. *Id.* 107. 11 *N. Y. Rep.* 485. 10 *id.* 431. 19 *Wend.* 329. 3 *Sandf.* 610, 47, 48.) The contract requires the defendants to deliver the goods in good order and condition, dangers of the seas only excepted. The defentants have not even attempted to show that there was any storm or bad weather, or that the loss was occasioned by the wind or the waves, or by the act of God or the public enemy. It was clearly for the jury to say, on the whole evidence, whether the cask was sufficient or not.

INGRAHAM, P. J., and BRADY, J. We agree that there should be a new trial, upon the ground that the exception to the charge at folio 86 was well taken. The justice erred in saying to the jury that the only question was whether the cask containing the wine brandy was properly made and sufficient, so that with ordinary care, or proper care, in bringing it around from San Francisco to this port, the cask would have arrived safely. This withdrew from the jury the question whether the casks were properly stowed, an element in the cause to the benefit of which the defendants were entitled.

GEO. G. BARNARD, J. The appellants' counsel presents two points (among others) on this appeal:

1st. That if any one is liable for the injury it is the owner of the hull, and not the defendant, who is the charterer for the voyage.

2d. That if the cask in question was well and sufficiently stowed, and secured in a proper manner, according to the well established custom existing at the port of lading at the time of its stowage, then neither the owner nor the charterer is liable, and that the court below erred in refusing to charge to this effect when so requested.

By the bill of lading the contract was to deliver the cask in question in good order and well conditioned at the port of New York, the danger of the seas only excepted. There is no doubt but that the bill of lading correctly sets forth the contract made for the carrying of the cask; for Milo Hoodley, who was the manager of the plaintiffs, at San Francisco, and who shipped the cask, testified: "The bills of lading corresponded in their terms with what my son told me of the agreement."

The question presented by the evidence was, whether this loss arose from the perils of the seas or not; if it did, the defendants are not liable.

The phrase "perils of the seas," covers all losses or damages which arise from the extraordinary action of the wind and sea. (*Parsons on Marine Ins., vol* 1, *p.* 544.)

What is to be considered ordinary and what extraordinary in the degree and effects of the perils, is a *question for the jury,* often of much difficulty. (1 *Phillips on Ins.* § 1087.) In some instances the damage done is a sufficient proof of the extraordinary degree of the operation of the peril. The question of most frequent occurrence, in regard to damage to the body of the ship is, whether the extent of the injury does not rather prove the ship to have been unseaworthy, than that the peril was extraordinary. (*Id.* 1105.) A proper

and sufficient stowage of a cargo implies that it is secured from damage by the ordinary action of the wind and sea. If the cargo is not so secured it is not properly and sufficiently stowed.

When then a cargo, on its arrival at the port of discharge is found to be damaged, and the damage is of a character that shows it must have occurred on the voyage, and it is established that the cargo was properly and sufficiently stowed and secured, the damage will be ascribed to the perils of the seas, unless it is affirmatively shown to be due to other causes; and the carrier under a bill of lading exempting him from liability for loss occurring through the perils of the sea, will not be liable for the damage, unless it is affirmatively shown that the damage might have been avoided by the exercise of proper skill and diligence at the time. If it is shown that the damage could have been avoided by such exercise of skill and diligence, then the damage is deemed to have occurred not through the perils of the seas, but rather through the carrier's negligence and inattention to his duty, and he is liable.

Upon these principles the cases of *Clark* v. *Barnwell*, (12 *How. U. S.* 272, *cited from pp.* 280, 281 ;) *Rich* v. *Lambert*, (12 *id.* 347, *cited from pp.* 356, 357 ;) and *Muddle* v. *Stride*, (9 *Carr. & Payne*, 163,) rest.

Applying these principles to the present case, we find that on the arrival of the cargo the cask in question had one of its staves broken by the pressure on it during the voyage, of one of the chocks used in stowing the cargo. There is a mass of testimony to the effect that the cargo was properly and sufficiently stowed and secured; there is no evidence tending to show that the damage could have been prevented by the use of care and diligence during the voyage. There is no affirmative evidence showing that the damage can be ascribed to any cause other than that of the perils of the seas, except such as can be drawn

Tysen *v.* Moore.

from the nature and character of the injury thereof. (*See* 1 *Phillips on Ins.* § 1105, *cited supra,* which, so far as it tends to show what caused the chock to work down, ascribed it to bad stowage.

The liability of the party who contracted to carry these goods, therefore, depends on the solution of the question whether the cargo was properly and sufficiently stowed and secured or not. There was a great deal of evidence given in support of the affirmative, while for the negative there was the inference to be drawn from the nature and character of the injury, and from the absence of all evidence that the vessel encountered anything but ordinary weather during her passage. The liability would depend on the finding of the jury on this question.

The defendant, therefore, was entitled to have the jury instructed in accordance with his request that if they found in the affirmative on this question, their verdict should be for the defendant. Having come to this conclusion, it is unnecessary, on this appeal, to consider or pass upon the first point raised by the appellants.

The judgment should be reversed, and new trial ordered, with costs to abide the event.

New trial granted.

[NEW YORK GENERAL TERM, April 4, 1870. *Ingraham, Geo. G. Barnard* and *Brady,* Justices.]